UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

BULOVA TECH RIVERSIDE LLC,       Case No. 8:10-bk-8500-MGW

          Debtor.          Chapter 11

_____/

## AMENDED CHAPTER 11 PLAN FOR
## BULOVA TECH RIVERSIDE, LLC

David S. Jennis
Florida Bar No. 775940
**Jennis & Bowen, P.L.**
400 N. Ashley Dr., Ste. 2540
Tampa, FL 33602
Telephone: (813) 229-1700
Facsimile: (813) 229-1707
Email: djennis@jennisbowen.com
Counsel to the Debtor and
Debtor-in-Possession

Dated: December 15, 2010

# TABLE OF CONTENTS

**ARTICLE 1**  **DEFINITIONS** ............................................................................................1
**ARTICLE 2**  **TREATMENT OF ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS** ...................8
  2.1........ Administrative Claims...............................................................................8
  2.2........ Priority Tax Claims....................................................................................9
**ARTICLE 3**  **CLASSIFICATION OF CLAIMS AND INTERESTS** .....................................9
  3.1........ Classification............................................................................................9
  3.2........ Classes.....................................................................................................9
**ARTICLE 4**  **IDENTIFICATION OF CLAIMS AND INTERESTS IMPAIRED AND NOT IMPAIRED BY THE PLAN** ...........................................................10
  4.1........ Classes of Claims and Interests Not Impaired by the Plan............................10
  4.2........ Classes of Claims Impaired by the Plan......................................................10
**ARTICLE 5**  **TREATMENT OF ALLOWED CLAIMS AND ALLOWED INTERESTS** ...................10
  5.1........ Claims and Equity Interests.....................................................................11
**ARTICLE 6**  **MEANS FOR EXECUTION OF PLAN** ....................................................15
  6.1........ Plan Funding............................................................................................15
  6.2........ Sale of Separate Property..........................................................................15
  6.3........ Funding of Operations..............................................................................16
  6.4........ Sale or Refinancing of Primary Property .....................................................16
  6.5........ Continued Corporate Existence..................................................................16
  6.6........ Provisions Concerning Plan Distributions....................................................16
  6.7........ Transactions on Business Days...................................................................16
  6.8........ Disputed Claims........................................................................................16
  6.9........ Withholding of Taxes.................................................................................17
  6.10...... Unclaimed Property...................................................................................17
  6.11...... Non-Negotiated Checks..............................................................................17
  6.12...... Exoneration and Reliance...........................................................................17
  6.13...... Form of Payments.....................................................................................18
  6.14...... Further Authorizations..............................................................................18
  6.15...... Transfer Taxes..........................................................................................18
  6.16...... Recordable Order.......................................................................................18
  6.17...... Effectuating Documents and Further Transactions........................................18
  6.18...... Corporate Action.......................................................................................18
  6.19...... Management of the Debtor..........................................................................18
**ARTICLE 7**  **EFFECTS OF PLAN CONFIRMATION** ..................................................19
  7.1........ Term of the Automatic Stay........................................................................19
  7.2........ No Liability for Tax Claims.........................................................................19
  7.3........ Disallowed Claims and Disallowed Equity Interests.......................................19
  7.4........ Retention and Enforcement of Claims or Interests.........................................19
**ARTICLE 8**  **TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ...........20
  8.1........ Assumption and Rejection of Executory Contracts and Unexpired Leases. ........20
  8.2........ Cure........................................................................................................20
  8.3........ Damages Upon Rejection...........................................................................20
**ARTICLE 9**  **EFFECTUATION AND SUPERVISION OF THE PLAN** ...............................21
  9.1........ Jurisdiction..............................................................................................21
  9.2........ General Retention......................................................................................21
  9.3........ Specific Purposes......................................................................................21
**ARTICLE 10**  **CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS** ...........22
  10.1...... Conditions to Confirmation........................................................................22
  10.2...... Conditions to Effectiveness........................................................................22
**ARTICLE 11**  **ACCEPTANCE OR REJECTION OF PLAN** ............................................23
  11.1...... Each Impaired Class Entitled to Vote Separately............................................23
  11.2...... Class Acceptance Requirement....................................................................23

11.3......Cramdown...........................................................................................................................23
**ARTICLE 12   MISCELLANEOUS PROVISIONS** .............................................................................23
12.1......Revocation of Plan........................................................................................................23
12.2......Headings.........................................................................................................................23
12.3......Entire Agreement...........................................................................................................23
12.4......Confirmation Order........................................................................................................24
12.5......Governing Law...............................................................................................................24
12.6......Time................................................................................................................................24
12.7......No Interest......................................................................................................................24
12.8......No Attorneys' Fees.........................................................................................................24
12.9......Addresses for Distributions to Holders of Allowed Claims..........................................24
12.10....Setoffs.............................................................................................................................25
12.11....Successors and Assigns...................................................................................................25
12.12....Reservation.....................................................................................................................25
**ARTICLE 13   MODIFICATION OF PLAN** .......................................................................................25
13.1......Modification of Plan.......................................................................................................25
13.2......Notices............................................................................................................................25

## INTRODUCTION

Bulova Tech Riverside LLC ("Riverside" or "Debtor") proposes the following Chapter 11 Plan (as may be amended from time to time, and including all addenda, exhibits, schedules and other attachments hereto, as any of the same may be amended from time to time, all of which are incorporated herein by reference, the "Plan"), pursuant to the provisions of Chapter 11 of the Bankruptcy Code (defined in Section 1.10 below).

For a discussion of the Debtor's history, business, operations, assets, and liabilities and for a summary and analysis of the Plan reference should be made to the *Disclosure Statement With Respect to Chapter 11 Plan for Bulova Tech Riverside LLC*, dated as of July 13, 2010 (the "Disclosure Statement") as may be supplemented from time to time. All Creditors and Holders of Equity Interests are encouraged to read the Disclosure Statement and the Plan carefully.

## ARTICLE 1
## DEFINITIONS

Unless the context otherwise requires, the following terms shall have the following meanings when used in initially capitalized form in the Plan. Such meanings shall be equally applicable to both the singular and plural forms of such terms. Any term used in capitalized form that is not defined in the Plan but that is defined in the Bankruptcy Code or Bankruptcy Rules (as such terms are hereinafter defined) shall have the meaning ascribed to such term in the Bankruptcy Code or Bankruptcy Rules. The rules of construction set forth in Section 102 of the Bankruptcy Code shall apply in construction of the Plan.

1.1     "Administrative Claim" means any Claim for the payment of any Administrative Expense.

1.2     "Administrative Expense" means (a) any cost or expense of administration of the Reorganization Case under Section 503(b) of the Bankruptcy Code including, but not limited to, any such cost or expense constituting (1) an actual and necessary post-petition cost and expense of preserving the Estate or operating the business of the Debtor, (2) a post-petition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in the ordinary course of business, (3) a payment that is to be made under the Plan to cure defaults on executory contractors and unexpired leases, and/or (4) compensation or reimbursement of an expense to the extent allowed by the Bankruptcy Court under Section 330(a) or 331 of the Bankruptcy Code and/or (b) any fee or charge assessed against the Estate under 28 U.S.C. § 1930.

1.3     "Affiliate" shall have the meaning ascribed to such term in Section 101(2) of the Bankruptcy Code; provided, however, that where the context so requires, the term "debtor," when used in Section 101(2) of the Bankruptcy Code, may mean an entity to which the defined term "affiliate" refers.

1.4     "Allowed" means and includes, with respect to any Claim or Equity Interest, (a) any Claim (other than a Disputed Claim) or Equity Interest, proof of which was timely filed or, by Order of the Bankruptcy Court, was not required to be filed or (b) any Claim (other than a

Disputed Claim) or Equity Interest that is listed in the Schedules as liquidated in the amount and not disputed or Contingent, and, in each such case in (a) and (b) herein, as to which either (1) no objection to the allowance thereof has been or may be filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or (2) the Claim or Equity Interest has been allowed by a Final Order of the Bankruptcy Court (but only to the extent so allowed).

1.5    "Allowed Amount" means the dollar amount in which a Claim is Allowed; provided, however, that the Allowed Amount of a Claim shall not exceed the Estimated Amount of such Claim as determined pursuant to an Estimation Order.  No amount shall be Allowed for or on account of punitive damages, penalties, or post-petition interest on account of any Claim except as otherwise expressly specified in the Plan or provided by Final Order of the Bankruptcy Court.

1.6    "Assets" shall mean all assets of the Debtor's Estate.

1.7    "Avoidance Action" means a Cause of Action which the Debtor may assert under Section 541, 542, 543, 544, 547, 548, 549, 550, or 553 of the Bankruptcy Code.

1.8    "Ballot" means the ballot, the form of which has been approved by the Bankruptcy Court, accompanying the Disclosure Statement provided to each Holder of a Claim or Equity Interest entitled to vote to accept or reject this Plan.

1.9    "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 1101 et seq., as in effect on the Petition Date, together with all amendments and modifications to the extent applicable to the Reorganization Case.

1.10    "Bankruptcy Court" means either the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, having jurisdiction over the Reorganization Case or, to the extent the reference is withdrawn, the District Court.

1.11    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as applicable to the Reorganization Case, together with all amendments and modifications to the extent applicable to the Reorganization Case.

1.12    "BLVT" means Bulova Technologies Group, Inc., a publicly traded holding company, and/or one of its operating subsidiaries or affiliates.

1.13    "BLVT Lease" means a long term lease to be executed, at the option of the purchaser or lender at the closing of the Sale, by BLVT for the lease of some or all of the Primary Property.

1.14    "Business Day" means any day other than a Saturday, Sunday, or legal holiday (as such term is defined in Bankruptcy Rule 9006(a)).

1.15    "Cash" means lawful currency of the United States of America and its equivalents.

1.16    "Causes of Action" means any and all of the Debtor's or the Debtor's Estate's actions, claims, demands, rights, defenses, counterclaims, suits, and causes of action, whether known or unknown, in law, equity, or otherwise, including (a) all Avoidance Actions; and (b) any and all other claims or rights of the Debtor of any value whatsoever, at law or in equity, against any Creditor or other third party.

1.17    "Claim" means (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, Contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, Contingent, matured, unmatured, disputed, undisputed, secured or unsecured.  The term "Claim" shall be broadly construed herein to include all manner and type of claim, whenever and wherever such claim may arise.

1.18    "Class" means a category of Holders of Claims or Interests as set forth in Article 3 of the Plan.

1.19    "Confirmation" or "Confirmation of the Plan" means the entry by the Bankruptcy Court of the Confirmation Order.

1.20    "Confirmation Date" means the date on which the Confirmation Order becomes a Final Order.

1.21    "Confirmation Hearing" means the hearing(s) which shall be held before the Bankruptcy Court in which the Debtor shall seek Confirmation of the Plan.

1.22    "Confirmation Order" means the Order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

1.23    "Contingent" means a right that has not accrued and that is dependent upon a future event or events that have or have not occurred and may never occur.

1.24    "Creditor" has the same meaning ascribed in Section 101(10) of the Bankruptcy Code and shall refer to any Holder of a Claim against the Debtor or Holder of any Claim against Property of the Debtor as defined in Section 102(2) of the Bankruptcy Code.

1.25    "Debtor-In-Possession" means the Debtor in its capacity, and with the status and rights conferred by Sections 1107 and 1108 of the Bankruptcy Code.

1.26    "Debtor" means Bulova Tech Riverside, LLC, a Florida limited liability company.

1.27    "Deficiency Claim" means any Unsecured Claim arising from a determination that the value of any Property securing an Allowed Claim is less than the total amount of the allowed Claim secured by such Property.

1.28    "Disclosure Statement" means the Disclosure Statement for the Plan approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code and approved by the

Bankruptcy Court (including all exhibits and schedules attached or referenced), as such disclosure statement may be amended or modified from time to time.

1.29 "<u>Disputed Claim</u>" means a Claim that has not been allowed by a Final Order of the Bankruptcy Court as to which (a) a Proof of Claim has been filed with the Bankruptcy Court, or is deemed filed under applicable law or Order of the Bankruptcy Court and (b) an objection to the allowance thereof has been or may be filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court and any such objection has not been (1) withdrawn, (2) overruled or denied in whole or part by a Final Order of the Bankruptcy Court, or (3) granted in whole or part by a Final Order of the Bankruptcy Court shall also be considered a Disputed Claim, whether or not an objection has been or may be filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, if (A) the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, (B) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules, (C) any corresponding Claim has been scheduled in the Schedules as disputed, Contingent, or unliquidated, (D) no corresponding Claim has been scheduled in the Schedules, or (E) such Claim is reflected as unliquidated or Contingent in the Proof of Claim filed in respect thereof.

1.30 "<u>District Court</u>" means the United States District Court for the Middle District of Florida, or the unit thereof having jurisdiction over the matter in question.

1.31 "<u>Effective Date</u>" means, and shall occur on the first (1st) Business Day immediately following the first date upon which all of the conditions to occurrence of the Effective Date contained in Section 10.2 of this Plan have been satisfied or waived by the Debtor; provided, however, that the Effective Date may occur at a point in time when the Confirmation Order is not a Final Order at the sole option of the Debtor unless the effectiveness of the Confirmation Order has been stayed or vacated.

1.32 "<u>Entity</u>" has the meaning ascribed in Section 101(15) of the Bankruptcy Code.

1.33 "<u>Equity Interest</u>" means any equity interest in the Debtor.

1.34 "<u>Estate</u>" means the estate created for the Debtor by Section 541 of the Bankruptcy Code upon the commencement of the Reorganization Case.

1.35 "<u>Estimated Amount</u>" means the amount at which the Bankruptcy Court estimates any Claim against the Debtor which is Contingent, unliquidated or disputed, for the purpose of: (a) allowance under Section 502(c) of the Bankruptcy Code or (b) assisting the Bankruptcy Court in making the findings required for Confirmation of the Plan pursuant to Section 1129(a)(7)(A)(ii) and (a)(11) and, if necessary, Section 1129(b)(1) and (2) of the Bankruptcy Code.

1.36 "<u>Estimation Order</u>" means an Order of the Bankruptcy Court that determines the Estimated Amount of a Claim against the Debtor.

1.37    "Exit Cash" means all Cash available to the Debtor on the Effective Date, inclusive of all Cash from operations maintained in the Debtor's operating accounts, any Cash derived from the Interim Lease, or unused funds as of the Effective Date to be used to pay unpaid Administrative Expense and other Allowed Claims to be paid on the Effective Date.

1.38    "Exit Funding" means any Cash and/or loans or other advances necessary to pay unpaid Administrative Expense or other Allowed Claims to be paid on the Effective Date.

1.39    "Fifth Third" means Fifth Third Bank.

1.40    "Final Order" means an Order, the implementation, operation, or effect of which has not been stayed and as to which Order (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing or writ of certiorari has expired and as to which no appeal or petition for review or rehearing or certiorari has been taken and is pending.

1.41    "Governmental Unit" means any foreign, provincial, federal, state, local, or municipal (a) government, (b) governmental agency, (c) governmental commissions, (d) governmental department, (e) governmental bureau, (f) governmental ministry, and/or (g) governmental entity.

1.42    "Holder" means an Entity holding a Claim or Equity Interest.

1.43    "Impaired" means impaired within the definition of Section 1124 of the Bankruptcy Code.

1.44    "Interim Lease" means a month-to-month lease, effective as of November 1, 2010, to be executed prior to (with the approval of the Bankruptcy Court) or on the Effective Date by BLVT or other third party tenant for a portion of the Primary Property, at the prevailing market rate in Adams County, Mississippi.

1.45    "Lien" means, with respect to any Asset or Property of the Debtor, any mortgage, lien, pledge, charge, security interest, encumbrance, or other security device of any kind affecting such Asset or Property.

1.46    "M&I Bank" means Marshall & Ilsley Bank its affiliates, and/or assigns.

1.47    "M&I Compromise" means the compromise of controversy between the Debtor and M&I Bank as set forth in *Debtor's Motion to Approve Compromise of Controversy with M&I Marshall Ilsley Bank* filed by the Debtor as Docket Number 95 and the *Order Granting Debtor's Motion to Approve Compromise of Controversy with M&I Marshall & Ilsley Bank* (Doc. No. 112), as modified under this Plan of the Bankruptcy Court approving the M&I Compromise.

1.48    "M&I Mortgage" means the Lien on the Primary Property in favor of M&I Bank which may be evidenced by a deed of trust executed by the Debtor pursuant to the Plan.

1.49    "M&I Release Price" means the amount by which the M&I Mortgage may be released, satisfied, or assigned as provided in Section 5.1(f) of this Plan.

1.50     "Order" means an order or judgment of a court.

1.51     "Person" means any person, individual, partnership, corporation, limited liability company, joint venture company, association or other entity of whatever kind, whether or not for profit, including, but not limited to, any "person" as such term is defined in Section 101(41) of the Bankruptcy Code, but excluding any Governmental Unit.

1.52     "Petition Date" means April 12, 2010.

1.53     "Plan" means this Chapter 11 Plan, either in its present form or as it may be altered, amended, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

1.54     "Primary Property" means the real property comprising 465,000 square foot warehousing and light industrial multi-use facility located at 110 L.E. Barry Road in Natchez, Mississippi.

1.55     "Priority Claim" means any Claim (other than an Administrative Claim or a Priority Tax Claim) to the extent such Claim is entitled to a priority in payment under Section 507(a) of the Bankruptcy Code.

1.56     "Priority Tax Claim" means any Claim to the extent that such Claim is entitled to a priority in payment under Section 507(a)(8) of the Bankruptcy Code.

1.57     "Projections" means any pro forma income and expense forecasts that may be attached to or filed as supplements to the Debtor's Disclosure Statement.

1.58     "Proof of Claim" means any proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rule 3001 or 3002.

1.59     "Pro Rata" or "Pro Rata Share" means the same proportion an Allowed Claim in a particular Class bears to the total amount of Allowed Claims in such Class.

1.60     "Property" means "property of the estate" as set forth in Section 541 of the Bankruptcy Code.

1.61     "Reorganization Case" means the above-captioned Chapter 11 case for the Debtor that was filed on the Petition Date.

1.62     "Reorganized Debtor" means the Debtor as of the occurrence of the Effective Date.

1.63     "Sale" means any sale, transfer, assignment, sale/leaseback, or refinancing of the Primary Property as contemplated in Article 6 of this Plan.

1.64     "Sale Agent" means any person or entity employed by the Debtor or, after the Effective Date, the Reorganized Debtor and, to the extent required, approved by the Bankruptcy

Court to list, market, solicit, or broker and take all other actions necessary to consummate the Sale.

1.65    "Sale Date" means the date of the closing of the Sale.

1.66    "Sale Period" means the twenty-four (24) calendar months commencing with the calendar month following the Effective Date.

1.67    "Sale Proceeds" means the net proceeds obtained from the Sale of the Primary Property less all closing costs paid by the Debtor in connection with the Sale.

1.68    "Schedules" means the Schedules, Statements, and Lists filed by the Debtor with the Bankruptcy Court in the Reorganization Case pursuant to Bankruptcy Rule 1007, as they may be amended or supplemented from time to time.

1.69    "Secured Claim" means any Claim that is (a) secured in whole or part, as of the Petition Date, by a Lien which Lien is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or (b) subject to setoff under Section 553 of the Bankruptcy Code, but only to the extent of the value of the Assets or Property securing any such Claim, or to the extent of the amount subject to setoff, as the case may be.

1.70    "Secured Claims Fund" means a segregated amount maintained by the Debtor for the deposit and maintenance of any periodic payments to be made on account of any Secured Claim that is not an Allowed Secured Claim as of the Effective Date of this Plan.

1.71    "Secured Claims Payment" means a monthly payment to be made by the Debtor commencing on the first business day of the second calendar month following the Effective Date to the Secured Claims Fund on account of any Secured Claim that is not an Allowed Claim as of the Effective Date of this Plan, plus the deposit in the Secured Claims Fund of any Separate Property Sale Proceeds not otherwise paid on account of Allowed Claims pursuant to this Plan.

1.72    "Separate Property" means that certain real property comprised of a non-contiguous separate parcel of property located at 91 Carthage Point Road in Natchez, Mississippi.

1.73    "Separate Property Sale" means the Sale of the Separate Property whether by private sale or public absolute auction to occur no later than July 31, 2011.

1.74    "Separate Property Sale Proceeds" means the net proceeds from the Sale of the Separate Property after payment of all sales commissions, transfer taxes, and any Allowed Claims Secured by the Separate Property.

1.75    "Small Claim" means any Unsecured Claim (a) that is in an amount not greater than three hundred dollars ($300.00) or (b) that is Allowed in an amount greater than three hundred dollars ($300.00) but whose Holder nevertheless elects to be treated as a Small Claim.

1.76    "Stanton" means "John D. Stanton," managing member and direct and indirect owner of all of the membership interests in the Debtor.

1.77    "Statutory Fees" means any fees or charges assessed against the Debtor's Estate under Section 1930, Chapter 12 of Title 28 of the United States Code.

1.78    "Stock Portfolio" means securities owned by third parties in various entities that were delivered to M&I Bank or its counsel on or about October 30, 2009 in connection with the execution of a judgment obtained against Stanton and other parties.

1.79    "Unimpaired" means any Claim that is not Impaired within the meaning of Section 1124 of the Bankruptcy Code.

1.80    "Unsecured Claim" means any Claim (regardless of whether such Claim is covered by insurance) that is neither secured nor entitled to priority under the Bankruptcy Code or a Final Order of the Bankruptcy Court, including, but not limited to:  (a) any Claim arising from the rejection of an executory contract or unexpired lease under Section 365 of the Bankruptcy Code and (b) any portion of a Claim to the extent the value of the Holder's interest in the Estate's interest in the Property securing such Claim is less than the amount of the Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code.

1.81    "Valley" means Valley National Bank, as successor to the rights of The Park Avenue Bank, its affiliates, and/or assigns.

1.82    "Valley Adversary" means the adversary proceeding filed by the Debtor on December 10, 2010 as Case No. 8:10-ap-01463-MGW seeking the avoidance of any Lien claimed by Valley on the Primary Property or any obligation or debt of the Debtor to Valley.

## ARTICLE 2
## TREATMENT OF ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

2.1    Administrative Claims.

Each Holder of an Allowed Administrative Claim and except any such Holder that agrees to different treatment, shall receive the Allowed Amount of such Holder's Allowed Administrative Claim, in Cash, in full satisfaction, settlement, release, extinguishment, and discharge of such Claim, on the Effective Date, or such other treatment as may be agreed upon by the Holder of such Allowed Administrative Claim and the Debtor; provided, however, that Allowed Administrative Claims representing post-petition liabilities incurred in the ordinary course of business by the Debtor have been paid and shall be paid by the Debtor in accordance with the terms and conditions of the particular transactions relating to such liabilities and any agreements relating thereto.

2.2     Priority Tax Claims.

Each Holder of an Allowed Priority Tax Claim (except any such Holder that agrees to different treatment) shall receive the Allowed Amount of such Holder's Allowed Priority Tax Claim, without post-petition interest or penalty in Cash, in full satisfaction, settlement, release, extinguishment, and discharge of such Claim from the Separate Property Sale Proceeds within thirty (30) days of the closing of the Separate Property Sale.

# ARTICLE 3
## CLASSIFICATION OF CLAIMS AND INTERESTS

3.1     Classification.

(a)     **General**.  Section 3.2 herein sets forth a designation of Classes of Claims and Equity Interests.  A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of the Class and is classified in a different Class to the extent the Claim or Equity Interest qualifies within the description of that different Class.

(b)     **Unclassified Claims**.  In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and are excluded from the Classes established in Section 3.2 herein.  The treatment accorded Administrative Claims and Priority Tax Claims is set forth in Article 2 of the Plan.

3.2     Classes.

For the purposes of the Plan, the Claims against, or Equity Interests in, the Debtor are grouped in the following Classes in accordance with Section 1122(a) of the Bankruptcy Code:

(a)     **Claims and Equity Interests**.  The following constitute the Classes of Claims and Equity Interests:

(i)     Class 1 - Priority Claims.  Class 1 consists of all Priority Claims.

(ii)     Class 2A - Secured Tax Claims of Adams County Tax Collector – Primary Property.  Class 2A consists of the Secured Tax Claim of Adams County Tax Collector ("Adams County") for 2009 real and personal property taxes secured by a first priority tax lien on the Primary Property against which property taxes were assessed.

(iii)     Class 2B – Secured Tax Claims of Adams County Tax Collector – Separate Property.  Class 2B consists of the Secured Tax Claim of Adams County for real and personal property taxes secured by a first priority tax lien on the Separate Property against which property taxes were assessed.

(iv)     Class 3 - Secured Claims of Valley.  Class 3 consists of the Secured Claims of Valley pursuant to a Deed of Trust and Security Agreement in favor of First American Title Insurance Company as Trustee for Park Avenue Bank, recorded in

Official Records Book 779, at page 449, of the Public Records of Adams County, Mississippi encumbering the Primary Property.

(v) <u>Class 3A – Secured Claim of Fifth Third</u>. Class 3A consists of the secured claim of Fifth Third pursuant to a Deed of Trust in favor of William S. Mendenhall, as Trustee for the benefit of Fifth Third, recorded in Official Records Book 786, at page 305, of the Public Records of Adams County, Mississippi.

(vi) <u>Class 4 - Secured Claim of M&I Bank</u>. Class 4 consists of any Secured Claim of M&I Bank as filed in the amount of $2,842,542.67 and asserted to be secured by an enforceable lien on the Primary Property.

(vii) <u>Class 5 - Secured Claim of Mississippi State Tax Commission</u>. Class 5 consists of any Secured Claim of Mississippi State Tax Commission ("<u>MSTC</u>") for state income tax withholding to the extent secured by a valid and unavoidable lien on property of the Debtor and any interest accruing thereon.

(viii) <u>Class 6 - General Unsecured Claims</u>. Class 6 consists of the Unsecured Claims not otherwise classified.

(ix) <u>Class 7 - Small Claims</u>. Class 7 consists of the Small Claims less than $300.

(x) <u>Class 8 - Equity Interests in the Debtor</u>. Class 8 consists of all Equity Interests.

# ARTICLE 4
# IDENTIFICATION OF CLAIMS AND INTERESTS IMPAIRED AND NOT IMPAIRED BY THE PLAN

4.1 <u>Classes of Claims and Interests Not Impaired by the Plan</u>.

Classes 1, 7, and 8 are Unimpaired by the Plan. Under Section 1126(f) of the Bankruptcy Code, the Holders of those Claims and Equity Interests are presumed conclusively to have voted to accept the Plan and, therefore, the votes of those Holders shall not be solicited.

4.2 <u>Classes of Claims Impaired by the Plan</u>.

Classes 2A, 2B, 3, 3A, 4, 5, and 6 are entitled to vote to accept or reject the Plan.

# ARTICLE 5
# TREATMENT OF ALLOWED CLAIMS AND ALLOWED INTERESTS

The Allowed Claims and Allowed Equity Interests, as classified in Article 3 herein, shall be satisfied in the manner set forth in this Article 5. The treatment of, and the consideration to be received by, Holders of Allowed Claims and Holders of Allowed Equity Interests pursuant to the Plan shall be in full satisfaction, settlement, release, extinguishment, and discharge of their respective Allowed Claims and Allowed Equity Interests.

5.1     <u>Claims and Equity Interests</u>.

The following constitutes the treatment under the Plan of the allowed Claims and Allowed Equity Interests:

(a)      **Class 1 – Priority Claims**.  Class 1 consists of all Priority Claims.  Each Holder of an Allowed Priority Claim shall receive (1) the Allowed Amount of such Holder's Allowed Priority Claim, in Cash, on the Effective Date, (2) such other treatment as may be agreed to in writing by such Holder and the Debtor, or (3) payment as otherwise ordered by a Final Order of the Bankruptcy Court.  Class 1 is Unimpaired under the Plan

(b)      **Class 2A – Secured Tax Claims of Adams County (Primary Property)**.  Class 2A consists of the Allowed Secured Claims of Adams County Tax Collector ("<u>Adams County</u>") secured by a first priority tax lien on the Primary Property.  The Holder of the Allowed Class 2A Claim shall receive in full satisfaction of the Allowed Class 2A Claim the following payment of Cash:  (i), on the fifteenth (15th) day of the calendar month following the Effective Date and on the fifteenth (15th) day of each calendar month thereafter, an amount equal to one-twelfth (1/12) of the outstanding real and personal property taxes due on the Primary Property plus all accrued interest thereon through the Effective Date until such taxes are paid in full, provided that any amounts owed on the Class 2A Secured Tax Claim shall paid in full from the Separate Property Sale Proceeds within thirty (30) days of the closing of the Separate Property Sale.  Adams County shall retain any lien on the Primary Property to secure unpaid property taxes until such Allowed Secured Claim is paid as provided in this Plan.  Class 2A is Impaired under the Plan.

(c)      **Class 2B – Secured Tax Claims of Adams County (Separate Property).**  Class 2B consists of the Allowed Secured Claims of Adams County Tax Collector ("<u>Adams County</u>") secured by a first priority tax lien on the Separate Property.  The Holder of the Allowed Class 2B Claim shall receive in full satisfaction of the Allowed Class 2B Claim the following payment of Cash:  (i), on the fifteenth (15th) day of the calendar month following the Effective Date and on the fifteenth (15th) day of each calendar month thereafter, an amount equal to one-twelfth (1/12) of the outstanding real and personal property taxes due on the Separate Property plus all accrued interest thereon through the Effective Date until such taxes are paid in full, provided that any amounts owed on the Class 2B Secured Tax Claim shall paid in full from the Separate Property Sale Proceeds within thirty (30) days of the Closing of the Separate Property Sale.  Adams County shall retain any lien on the Separate Property to secure unpaid property taxes until such Allowed Secured Claim is paid as provided in this Plan.  Class 2B is Impaired under the Plan.

(d)      **Class 3 – Secured Claims of Valley**.  Class 3 consists of the Secured Claim of Valley which shall be treated as follows:

(i)      The Property will be listed for Sale with a Sale Agent prior to or on the Effective Date;

(ii)      The Reorganized Debtor will continue to operate its warehouse and distribution business and market the Primary Property during the Sale Period;

(iii)     The Reorganized Debtor will sell the Primary Property during or at the expiration of the Sale Period free and clear of all Liens with all Liens to attach to the Sale Proceeds;

(iv)     In the event the Primary Property is not sold prior to the expiration of the Sale Period or such earlier date as determined by the Debtor, Primary Property will be sold to the highest and best offer submitted at an absolute sealed bid auction (or other similar sale process) (the "Auction") or otherwise disposed of in accordance with State law within thirty (30) days of the expiration of the Sale Period;

(v)     The extent of Valley's Allowed Secured Claim and the extent, validity, priority, and avoidability of any Lien of Valley in the Primary Property shall be determined through the litigation or settlement of the Valley Adversary pursuant to Section 548 of the Bankruptcy Code;

(vi)     On the Sale Date, the Sale Proceeds and any Cash remaining in the Secured Claims Fund will be paid to the Holders of the Allowed Secured Claims secured by the Primary Property in accordance with the priority of the respective Lien(s) on Property, to the extent such Secured Claims have not been previously satisfied by the Separate Property Sale Proceeds, up to the amount of the Allowed Secured Claim;

(vii)     In the event the Sale of Primary Property is accomplished pursuant to the Auction described in subparagraph (iv) above, the Holder of an Allowed Secured Claim may exercise its Credit Bid Right at the Sale and may offset such bid by the amount of such Holder's Allowed Secured Claim secured by the Primary Property by submitting a competing bid within ten (10) days of written notice of the Debtor's selection of the highest and best offer at the Auction;

(viii)     During the Sale Period, the Reorganized Debtor shall continue to provide insurance on the Primary Property and shall provide Valley with proof of such insurance;

(ix)     During the Sale Period, commencing on the later of (a) the fifteenth (15th) day of the second calendar month following the Effective Date or (b) fifteen (15) days after any order or judgment determining the extent, validity, and priority of Valley's Lien on the Primary Property becomes a Final Order, the Reorganized Debtor will make monthly interest payments to Valley in an amount as may be agreed between the Debtor and Valley or as determined by the Bankruptcy Court as necessary to satisfy any requirements of Section 1129(b) of the Bankruptcy Code provided that to the extent Valley's Secured Claim is not an Allowed Secured Claim as of the Effective Date of this Plan, the monthly payment that would otherwise be paid to Valley shall be a Secured Claims Payment and deposited into the Secured Claims Fund.  Upon the determination of the extent, validity, and priority of Valley's Secured Claim, if any, through the Valley Adversary, the funds in the Secured Claims Fund shall be paid to Valley or to

M&I Bank in accordance with the priority of the respective Lien in the Primary Property;

(x)     Valley shall retain its Lien on the Primary Property unless and until (a) such Lien is determined to be avoided by the Bankruptcy Court in connection with the Valley Adversary or (b) until the closing of the Sale and satisfaction from the Sale Proceeds; and

(xi)    The Allowed Secured Claim of Valley may be paid or satisfied pursuant to any settlement or compromise of the Valley Adversary.

Class 3 is Impaired under the Plan.

(e)     **Class 3A – Secured Claim of Fifth Third**.  Class 3A consists of the Allowed Claim of Fifth Third, which shall be treated as follows:

(i)     Fifth Third will retain its Lien on the Primary Property securing any obligations of CastCrete Corporation to indemnify or reimburse Fifth Third in connection with a letter of credit issued by Fifth Third in favor of CastCrete pending the termination or expiration of the letter of credit, provided, however, such Lien shall not exceed any potential liability of Fifth Third for the letter of credit under the credit agreement for the same.

(ii)    In the event the Primary Property is sold prior to the termination or expiration of the letter of credit, the Debtor will deposit sufficient cash or cash equivalent from the Proceeds of Sale into an interest bearing escrow account, which shall be held at Fifth Third or, if held at another bank, pledged to Fifth Third with a control agreement to serve as substitute collateral in lieu of the Primary Property.  The amount of funds to be deposited shall not exceed the actual amount of any obligation of CastCrete to indemnify or reimburse Fifth Third for the letter of credit under the credit agreement as of the date of the closing of the Sale plus $10,000.00.

Class 3A is Impaired under the Plan.

(f)     **Class 4 – Secured Claim of M&I Bank**.  Class 4 consists of the Secured Claim of M&I Bank.

(i)     Stanton or other non-debtor sources will pay to M&I Bank one payment of $50,000 on October 20, 2010 and one payment of $150,000 on December 24, 2010, for a total of $200,000.

(ii)    M&I Bank's claim will be allowed as a Secured Claim in the amount of $2,842,542.67 and shall be secured by the Lien on the Primary Property, as granted by this Plan and that shall be deemed perfected as of the Effective Date, which may be evidenced by the M&I Mortgage, which may be recorded in the Public Records of Adams County, Mississippi and afforded whatever priority may be available under applicable non-bankruptcy law.

(iii)    M&I Bank's Allowed Secured Claim will be paid by Debtor through monthly payments of $8,000 with a two-year balloon payment commencing on the fifteenth (15th) day of the calendar month following the Effective Date.

(iv)    M&I Bank will hold the Stock Portfolio pursuant to a consensual security agreement whereby M&I Bank's continued possession and holding of the Stock Portfolio will act as additional security for the Debtor's obligations under the Plan.  M&I Bank will not liquidate the Stock Portfolio unless there is an event of default under any of the payments provided in paragraphs (a) and (b) above.  In the event of a default, the value of the Stock Portfolio will "re-set" as of the date of any default for all purposes.

(v)    M&I Bank will return the Stock Portfolio to Stanton or his assigns after receipt of the first twelve (12) monthly payments due by the Debtor under the Plan ($96,000).  This amount may be prepaid during the first twelve (12) months of the Plan and, upon such pre-payment, the Debtor's obligations with respect to the monthly payments will be suspended to the extent of the prepayment amount.

(vi)    Failure to make any of the payments described in subparagraphs (i) and (iii) above shall be an additional event of default under the M&I Mortgage and the automatic stay will not apply to M&I Bank's exercise of its default remedies under the M&I Mortgage or the exercise of any Lien rights against the Primary Property provided by this Plan.

(vii)    The M&I Release Price by which M&I Bank will agree to satisfy or assign its Secured Claim and the M&I Mortgage on the Primary Property will be $2,400,000, less payments from subparagraphs (i) and (iii) above, if paid within the first twelve (12) months following the Effective Date of the Plan.

(viii)    The M&I Release Price will increase by $100,000, less payments received pursuant to subparagraphs (i) and (iii), if paid during the thirteenth (13th) month following the Effective Date of the Plan.

(ix)    The M&I Release Price will increase by $50,000 per month, less payments from subparagraphs (i) and (iii) above, if paid in the fourteenth through eighteenth months following the Effective Date of the Plan.

(x)    After the eighteenth month following the Effective Date of the Plan, the M&I Release Price shall be the full amount of M&I Bank's Allowed Secured Claim, less all amounts paid to date pursuant to subparagraphs (i) and (iii), above.

(xi)    M&I Bank will forbear from any collection activity against Stanton, his direct or indirect membership interest in the Debtor and related third parties for so long as the payments provided in subparagraphs (i) and (iii) are not in default.

M&I Bank shall retain any Lien on the Primary Property, irrespective of recording a deed of trust, until the closing of the Sale and satisfaction of such Lien through the payment of the M&I

Release Price as provided under this Plan from the Sale Proceeds. Class 4 is Impaired under the Plan.

(g) **Class 5 – Secured Claim of MSTC**. Class 5 consists of the Secured Claim of the Mississippi State Tax Commission ("MSTC"). The Holder of the Allowed Class 5 Claim shall receive in full satisfaction of the Allowed Class 5 Claim Cash from the Separate Property Sale Proceeds. MSTC shall retain any Lien provided under statute to secure unpaid taxes until such Allowed Secured Claim is paid as provided in this Plan. Class 5 is Impaired under the Plan.

(h) **Class 6 –General Unsecured Claims**. Class 6 consists of the Unsecured Claims not otherwise classified herein. The Debtor shall pay the Holders of any Allowed Class 6 Claim an amount of Cash equal to fifty percent (50%) of such Holder's Allowed Class 6 General Unsecured Claim within ninety (90) days of the Effective Date and shall pay the remaining fifty percent (50%) of such Allowed Class 6 General Unsecured Claim within fifteen (15) days of the Closing of the Separate Property Sale. Class 6 is Impaired under the Plan.

(i) **Class 7 – Small Claims**. Class 7 consists of the Small Claims. Within thirty (30) days of the Effective Date, each Holder of an Allowed Small Claim shall receive the lesser of (1) one hundred percent (100%) of the Allowed amount of such Holder's Claim or (2) three hundred dollars ($300.00) in Cash, on the Effective Date, and in full satisfaction of such Holder's Allowed Small Claim. Class 7 is Unimpaired under the Plan.

(j) **Class 8 – Equity Interests in the Debtor**. On the Effective Date, Class 8 consists of all Equity Interests. All Equity Interests will be retained by the existing Holders of such Interests. Any Sale Proceeds or Separate Property Sale Proceeds not paid on account of Allowed claims pursuant to this Plan shall be retained by the Reorganized Debtor and may be used by the Reorganized Debtor as permitted under applicable law and the Debtor's corporate governing documents. Class 8 is Unimpaired under the Plan.

## ARTICLE 6
## MEANS FOR EXECUTION OF PLAN

6.1 Plan Funding.

The Debtor will fund the payments to be made under the Plan on the Effective Date through Cash derived from operations, from the income generated from the month-to-month Interim Lease to be entered into with BLVT or other third party, and from any Exit Financing.

6.2 Sale of Separate Property.

The Debtor will sell the Separate Property on or prior to July 31, 2011. The net proceeds from the sale of the Separate Property will be used to pay any unpaid Allowed Administrative Claim, Allowed Priority Tax Claims, and Allowed Secured Tax Claims with any excess to be deposited in the Secured Claims Fund.

6.3     Funding of Operations.

The Reorganized Debtor's operations during the Sale Period will be funded by Cash generated from operations and supplemented to the extent necessary by Cash generated from the Interim Lease after the Effective Date.

6.4     Sale or Refinancing of Primary Property

Any Allowed Secured Claim secured by valid and unavoidable Liens on the Primary Property and not paid in full from the Separate Property Sale Proceeds will be paid from the Sale Proceeds derived from the Sale (which may be in the form of a financing transaction, sale, and leaseback or other similar transaction) within twenty-four (24) months of the Effective Date. In order to provide an income stream to a prospective purchaser or lender, the Debtor may execute the BLVT Lease contemporaneous with the closing of the Sale.

6.5     Continued Corporate Existence.

The Debtor will continue to exist after the Effective Date as a corporate entity with all of the powers of a Florida limited liability company including, without limitation, making distributions under the Plan, the preparation and filing or any tax returns, and prosecuting any claims, avoidance actions, and objections.

6.6     Provisions Concerning Plan Distributions.

(a)     **Distributions**. The Debtor shall make all distributions required under the Plan.

(b)     **Date of Distributions**. Distributions shall be made on the Effective Date, unless otherwise provided in the Plan or as may be ordered by the Bankruptcy Court. Distributions to be made on the Effective Date shall be deemed made on the Effective Date if made either (i) on the Effective Date or (ii) as soon as practicable thereafter, but in no event later than ten (10) Business Days after the Effective Date, except as otherwise provided for herein, or except as may be ordered by the Bankruptcy Court.

6.7     Transactions on Business Days.

If the Effective Date, or any other date on which a transaction may occur under the Plan, shall occur on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day shall occur instead on the next succeeding Business Day.

6.8     Disputed Claims.

(a)     **Objection Deadline**. As soon as practicable, but in no event later than sixty (60) calendar days after the Confirmation Date, unless otherwise ordered by the Bankruptcy Court, objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders thereof and the United States Trustee for the Middle District of Florida.

(b)     **Prosecution of Objections**. On and after the Effective Date, only the Debtor shall have the authority to file objections, litigate to judgment, settle, or withdraw objections to

Disputed Claims. On and after the Effective Date, the Debtor shall be entitled to compromise or settle any Disputed Claim without approval of the Bankruptcy Court.

6.9       <u>Withholding of Taxes</u>.

The Debtor shall withhold from any Assets and/or Property distributed under the Plan any Assets and/or Property which must be withheld for foreign, federal, state, or local taxes payable with respect thereto or payable by the Person entitled to such Assets and/or Property to the extent required by applicable law.

6.10     <u>Unclaimed Property</u>.

Any Cash, Assets, or other Property to be distributed under the Plan that remains unclaimed or otherwise not deliverable to the Person or Governmental Unit entitled thereto as of the later of ninety (90) days after (a) the Confirmation Date, or (b) the date any Contingent Claim becomes an Allowed Claim shall be paid into the Registry of the Bankruptcy Court and such Person's or Governmental Unit's Claim shall no longer be deemed to be Allowed, and such Person or Governmental Unit shall be deemed to have waived its rights to such payments or distributions under the Plan pursuant to Section 1143 of the Bankruptcy Code and shall have no Claim.

6.11     <u>Non-Negotiated Checks</u>.

If a Holder of an Allowed Claim fails to negotiate a check issued to such Holder pursuant to the Plan within ninety (90) days of the date such check was issued, then the amount of Cash attributable to such check shall be deemed to be unclaimed property in respect of such Holder's Allowed Claim and treated in accordance with Section 6.10 of this Plan. In such event, such Holder's Claim shall no longer be deemed to be Allowed and such Holder shall be deemed to have waived its rights to such payments or distributions under the Plan pursuant to Section 1143 of the Bankruptcy Code and shall have no further Claim in respect of such distribution and shall not participate in any further distributions under the Plan with respect to such Claim.

6.12     <u>Exoneration and Reliance</u>.

The Debtor shall not be liable to any Holder of a Claim or Equity Interest or other party with respect to any action, omission, forbearance from action, decision, or exercise of discretion taken during the period from the Petition Date to the Effective Date in connection with: (a) the management or operation of the Debtor; (b) the implementation of any of the transactions provided for, or contemplated in, the Plan; or (c) the administration of the Plan or the Assets and Property to be distributed pursuant to the Plan, other than for willful misconduct or gross negligence. The Debtor may rely upon the opinions of counsel, certified public accountants, and other experts or professionals employed by the Debtor, and such reliance shall conclusively establish good faith and the absence of willful misconduct. In any action, suit, or proceeding by any Holder of a Claim or Equity Interest or other party in interest contesting any action by, or non-action of, the Debtor as not being in good faith, the reasonable attorneys' fees and costs of the prevailing party shall be paid by the losing party.

6.13     Form of Payments.

Except where the Plan contemplates deferred payment or delivery of Property, instruments, or deeds, payments to be made pursuant to the Plan shall be made by check.

6.14     Further Authorizations.

The Debtor, if and to the extent necessary, shall seek such Orders, judgments, injunctions, and/or rulings that may be required to carry out further the intentions and purposes of, and give full effect to the provisions of, the Plan.

6.15     Transfer Taxes.

The transfer of any Assets and/or Property pursuant to the Plan, including the transfer of the Primary Property and Separate Property pursuant to the Sale, or the making or delivery of an instrument of transfer under the Plan shall not (and the Confirmation Order shall so order), pursuant to Section 1146 of the Bankruptcy Code, be taxed under any law imposing a stamp tax, transfer tax, and/or other similar tax.

6.16     Recordable Order.

The Confirmation Order shall be declared to be in recordable form and shall be accepted by any recording officer for filing and recording purposes without further or additional orders, certifications, or other supporting documents.

6.17     Effectuating Documents and Further Transactions.

The managers and officers of the Debtor shall be authorized to execute, deliver, file, and/or record such contracts, instruments, releases, indentures, and other agreements or documents and take or direct such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

6.18     Corporate Action.

All matters provided for under the Plan involving the organizational structure of the Debtor, or action to be taken by, or required of, the Debtor, shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the members of any such entities.

6.19     Management of the Debtor.

On or after the Effective Date, the business and affairs of the Reorganized Debtor shall be managed by the managers and officers as provided in the Debtor's organizational documents, or applicable law.

# ARTICLE 7
## EFFECTS OF PLAN CONFIRMATION

7.1     Term of the Automatic Stay.

        All injunctions or automatic stays pursuant to Section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

7.2     No Liability for Tax Claims.

        Unless a taxing authority has asserted a Claim against the Debtor before the bar date established therefore, no Claim of such authority shall be Allowed against the Debtor for taxes, penalties, and/or interest arising out of the failure, if any, of the Debtor to have filed any tax return, including, but not limited to, any income tax return or franchise tax return in any prior year or arising out of an audit of any return for a period before the Petition Date.

7.3     Disallowed Claims and Disallowed Equity Interests.

        The Confirmation Order, except as otherwise provided herein, shall constitute an Order: (a) disallowing all Claims and Equity Interests to the extent such Claims and Equity Interests are not allowable under any provision of Section 502 of the Bankruptcy Code, including, but not limited to, time-barred Claims and Equity Interests, and Claims for unmatured interest; and (b) disallowing or subordinating, as the case may be, any Claims for penalties or punitive damages.

7.4     Retention and Enforcement of Claims or Interests.

        Pursuant to Section 1123(b)(4) of the Bankruptcy Code, the Debtor and/or the Reorganized Debtor shall retain and have the exclusive right to enforce against any Person or Governmental Unit any and all Causes of Action and rights of the Debtor that arose both before and after the Petition Date, including the rights and powers of a trustee and Debtor-In-Possession and all causes of action granted pursuant to and still existing under Sections 502, 544, 545, 547, 548, 549, 550, 551, and/or 553 of the Bankruptcy Code, whether by affirmative claim, defense, off-set, or right of set-off or through other legal or equitable claims or defense. To the extent of any recovery of Cash arising from any claim or cause of action assert by the Debtor, the net proceeds of such recovery, after payment of all reasonable attorney fees and other costs incurred in obtaining such recovery shall be distributed in the following order: (a) on a Pro Rata Basis on account of any Allowed Claim that is not paid in full on the Effective Date; (b) to interest on such Allowed Claim; and (c) Pro Rata on account of Equity Interests.

        The Plan does not, and is not intended to, release any Causes of Action or objections to Claims, and all such rights are specifically reserved in favor of the Debtor.  The Plan shall preserve rights, claims, objections, and rights of action of the Debtor, whether now known or unknown.  A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Disclosure Statement.

The entry of the Confirmation Order will act as a release, waiver, bar or estoppel of any Cause of Action against such Creditor or any other Person or Entity, unless such Creditor, Person, or Entity is specifically identified by name as a released party in the Plan, in the Confirmation Order, or in any other Final Order of the Bankruptcy Court. Confirmation of the Plan and entry of the Confirmation Order shall not be deemed to have any res judicata, collateral estoppel or other preclusive effect which would precede, preclude, or inhibit prosecution of such Cause of Action, defense, or Objection to Claim following Confirmation of the Plan.

# ARTICLE 8
# TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1     <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>.

(a)     **Rejection**.  Any executory contracts or unexpired leases that (a) have not been assumed by the Debtor with the Bankruptcy Court's approval on or prior to the Confirmation Date, and (b) are not the subject of a pending motion to assume on the Confirmation Date, shall, as of the Confirmation Date (subject to the occurrence of the Effective Date), be deemed to have been rejected by the Debtor.  The Plan shall constitute a motion to reject such executory contracts and unexpired leases, and the Debtor shall have no liability thereunder except as is specifically provided in the Plan.  Entry of the Confirmation Order shall constitute approval of such rejections.

(b)     **Assumption**.  Notwithstanding anything in Section 8.1(a) to the contrary, the Debtor may seek to assume and assign certain executory contracts and unexpired leases that will be identified in any motion to assume pending on the Confirmation Date.

(c)     **Reservation**.  Notwithstanding anything in Sections 8.1(a) and 8.1(b) to the contrary, this Section 8.1 shall not apply to any agreement denominated as an executory contract or unexpired lease that is treated otherwise under the Plan.

8.2     <u>Cure</u>.

At the election of the Debtor, any monetary default under any executory contract and unexpired lease to be assumed shall be satisfied pursuant to Section 365(b)(1) of the Bankruptcy Code by payment of the default amount in Cash on the Effective Date, or (b) on such other terms as agreed to by the parties to such executory contract or unexpired lease.  In the event of a dispute regarding the (i) the amount of any cure payments, (ii) the ability of the Debtor to provide adequate assurance of future performance under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption, the cure payments required by Section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving assumption.

8.3     <u>Damages Upon Rejection</u>.

The Bankruptcy Court shall determine the dollar amount, if any, of the Claim of any Person or Governmental Unit seeking damages by reason of the rejection of any executory contract or unexpired lease; provided, however, that such Person or Governmental Unit files a Proof of Claim with the Bankruptcy Court before thirty (30) calendar days following the

Confirmation Date. To the extent any such Claim is Allowed by the Bankruptcy Court by Final Order, such Claim shall become, and shall be treated for all purposes under the Plan as, an Allowed Unsecured Claim and the Holder thereof shall receive distributions as a holder of an Allowed Claim in such Class or Classes pursuant to the Plan. The Plan shall constitute notice to Persons and Governmental Units that may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the bar date for filing a Proof of Claim in connection therewith; provide, however, that the Debtor shall have no obligation to notify such Persons and Governmental Units that the Confirmation Date has occurred.

# ARTICLE 9
## EFFECTUATION AND SUPERVISION OF THE PLAN

9.1     Jurisdiction.

Until the Reorganization Case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction that is permissible, including that necessary to ensure that the purposes and intent of the Plan are carried out and to hear and determine all matters that could have been brought before the entry of the Confirmation Order. Except as otherwise provided in the Plan, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against the Debtor and to adjudicate and enforce all causes of action that may exist on behalf of the Debtor. Nothing contained herein shall prevent the Debtor from taking such action as may be necessary to enforce or prosecute any cause of action that the Debtor has or may have and that may not have been enforced or prosecuted by the Debtor, which cause of action shall survive Confirmation of the Plan and shall not be affected thereby except as specifically provided herein.

9.2     General Retention.

Following Confirmation of the Plan, the Bankruptcy Court shall also retain jurisdiction for the purposes of classifying any Claim, re-examining Claims that have been Allowed for purposes of voting and determining such objections as may be filed with the Bankruptcy Court with respect to any Claim. The failure by the Debtor to object to or examine any Claim for the purposes of voting shall not be deemed a waiver of the rights of the Debtor to object to or re-examine such Claim, in whole or in part.

9.3     Specific Purposes.

(a)     To modify the Plan after Confirmation, pursuant to the Bankruptcy Rules and the Bankruptcy Code;

(b)     To correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance under the Plan, and any other documents related thereto in the event the Effective Date does not occur as provided herein, so that the intended effect of the Plan and such other documents may be substantially realized thereby;

(c)     To assure the performance of the obligation to make distributions under the Plan;

(d)     To enforce and interpret the terms and conditions of the Plan;

(e)     To hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits, and similar or related matters with respect to the Debtor or its Estate arising prior to the Effective Date or relating to the period of administration of the Reorganization Case;

(f)     To hear and determine all applications of compensation of professionals and reimbursement of expenses under Sections 330, 331, or 503(b) of the Bankruptcy Code;

(g)     To determine any and all motions pending on Confirmation for the rejection, assumption, or assignment of executory contracts or unexpired leases and the allowance of any Claim resulting therefrom;

(h)     To determine all questions and disputes regarding title to the assets of the Debtor or its Estate.

## ARTICLE 10
## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS

10.1    Conditions to Confirmation.

Confirmation of the Plan shall not occur unless each of the following conditions has been satisfied or has been waived in a writing executed by the Debtor.  These Confirmation conditions are as follows:

(a)     **Disclosure Statement**.  The Bankruptcy Court shall have approved the Disclosure Statement in a Final Order.

(b)     **Confirmation Order**.  The Bankruptcy Court shall have made such findings and determinations regarding the Plan as shall enable the entry of the Confirmation Order, and any other Order entered in conjunction therewith, in form and substance acceptable to the Debtor.

10.2    Conditions to Effectiveness.

Notwithstanding any other provision of the Plan or the Confirmation Order, the Effective Date of the Plan shall not occur unless and until the following condition has been satisfied or has been waived in a writing executed by the Debtor.

**Final Confirmation Order**.  The Confirmation Order (and such related Orders) shall have become a Final Order.

# ARTICLE 11
## ACCEPTANCE OR REJECTION OF PLAN

11.1    Each Impaired Class Entitled to Vote Separately.

Each Impaired Class of Claims or Equity Interests shall be entitled to vote separately to accept or reject the Plan.

11.2    Class Acceptance Requirement.

Consistent with Section 1126(c) of the Bankruptcy Code, and except as provided in Section 1126(e) of the Bankruptcy Code, a Class of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in the amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

11.3    Cramdown.

If any Impaired Class of Claims fails to accept the Plan by the requisite majority, the Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code, on the basis that the Plan is fair and equitable, does not discriminate unfairly with respect to any non-accepting Impaired Class and provides to the Holders of Claims in each Impaired Class property of a value, as of the Effective Date, equal to the Allowed Amount of such Claims, or that any Holder of a Claim or Equity Interest that is junior to such Claims shall not receive or retain any property on account of such junior Claim or Equity Interest.

# ARTICLE 12
## MISCELLANEOUS PROVISIONS

12.1    Revocation of Plan.

The Debtor reserves the right to revoke and withdraw the Plan before the entry of the Confirmation Order.  If the Debtor revokes or withdraws the Plan, or if Confirmation of the Plan does not occur, then, with respect to the Debtor, the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, or any other Person or to prejudice in any manner the rights of the Debtor, or such Person in any further proceedings involving the Debtor.

12.2    Headings.

Headings are utilized in the Plan for convenience and reference only and shall not constitute a part of the Plan for any other purpose.

12.3    Entire Agreement.

The Plan sets forth the entire agreement and undertakings relating to the subject matter herein and supersedes all prior discussions and documents.

12.4    Confirmation Order.

In addition to the requirements set forth in the Plan, the Confirmation Order shall also ratify all transactions consistent with the provisions of the Plan effected by the Debtor during the period commencing on the Petition Date and ending on the Effective Date.

12.5    Governing Law.

Except to the extent that federal law (including, but not limited to, the Bankruptcy Code and the Bankruptcy Rules) is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

12.6    Time.

In computing any period of time prescribed or allowed by the Plan, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is not a Business Day or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days. When the period of time prescribed or allowed is less than eight (8) days, intermediate days that are not Business Days shall be excluded in the computation.

12.7    No Interest.

Except as expressly stated in the Plan or otherwise Allowed by Final Order of the Bankruptcy Court, no interest, penalty or late charge arising after the Petition Date is to be Allowed on any Claim.

12.8    No Attorneys' Fees.

No attorneys' fees shall be paid with respect to any Claim except as specified herein or as Allowed by a Final Order of the Bankruptcy Court.

12.9    Addresses for Distributions to Holders of Allowed Claims.

Unless otherwise provided in the Plan or a Final Order of the Bankruptcy Court, distributions to be made under the Plan to Holders of Allowed Claims shall be made by first class United States mail, postage prepaid to: (a) the latest mailing address set forth in a Proof of Claim timely filed with the Bankruptcy Court by or on behalf of such Holders or (b) if no such Proof of Claim has been timely filed, the mailing address set forth in the Schedules. The Debtor shall not be required to make any other effort to locate or ascertain the address of the Holder of any Claim.

12.10   Setoffs.

Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Debtor may, but shall not be required to, setoff against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of any claims or Causes of Action of any nature whatsoever the Debtor may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Claim that the Debtor may have against such Holder.

12.11   Successors and Assigns.

The rights, duties, and obligations of any Person or Governmental Unit named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person or Governmental Unit.

12.12   Reservation.

If the Plan is not confirmed by the Bankruptcy Court for any reason, the rights of all parties in interest in the Reorganization Case shall be reserved in full.  Furthermore, any concession reflected herein is made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Reorganization Case shall be bound or deemed prejudiced by any such Concession.

## ARTICLE 13
## MODIFICATION OF PLAN

13.1   Modification of Plan.

The Debtor may propose amendments to, or modifications of, the Plan under Section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date.

13.2   Notices.

All notices, requests, elections, or demands in connection with the Plan shall be in writing and shall be mailed by registered or certified mail, return receipt requested to:

If to the Debtor:

Bulova Tech Riverside LLC
Attn:  John Stanton
6324 County Road 579
Seffner, Florida  33584

With mandatory copies to:

    David S. Jennis
    Jennis & Bowen, P.L.
    400 North Ashley Drive
    Suite 2540
    Tampa, Florida  33602

Dated: Tampa, Florida
       December 15, 2010

                            BULOVA TECH RIVERSIDE LLC


                            By:   */s/ John Stanton*            
                                  John Stanton, Manager