UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

BULOVA TECH RIVERSIDE LLC,           Case No. 8:10-bk-8500-MGW

      Debtor.                         Chapter 11
_____/

**DECLARATION IN SUPPORT OF CONFIRMATION
OF CHAPTER 11 PLAN FOR BULOVA TECH RIVERSIDE LLC**

The undersigned, John Stanton, hereby swears and declares under penalty of perjury pursuant to the provisions of 28 U.S.C. § 1746, that the following statements are true and correct (this "Declaration"):

I.     **COMPETENCY OF DECLARANT**

With respect to my competency to testify as to the facts contained in this Declaration in Support of Confirmation:

    1.     I am John Stanton, Manager of Bulova Tech Riverside LLC (the "Debtor" or "Riverside"). I am the person with the most complete personal knowledge of the Debtor's financial books and records of account, payables, and receivables, and have the most knowledge of the Debtor's business transactions. I am also familiar with the Debtor's *Amended Chapter 11 Plan for Bulova Tech Riverside LLC* (the "Plan"), the treatment of secured and unsecured creditors and equity interests under the Plan, and the various sources of funds available for payment of allowed claims under the Plan.

    2.     Unless otherwise stated, I have personal knowledge of the facts contained in this Declaration or base this Declaration upon the available books and records of the Debtor (the "Records"). The Records are regularly maintained in the normal course of the Debtor's

business and it is the regular practice of the Debtor to create and maintain the Records. The Records reflect, among other things, the Debtor's assets and liabilities, the results of its pre- and post-petition operations and liabilities, and the funds that may be available to pay creditors under the Plan, if confirmed. The Debtor's Records reflect information that is noted in the Records at the time of receipt by me or persons employed by the Debtor whose duties include the recording of this information. I, or the Debtor's staff at my direction, maintain and update these Records and use and rely upon them in connection with the Debtor's business, and they are in my custodial possession.

3. I am the managing member of the Debtor and direct and indirect owner of all of the membership interests of the Debtor. I have reviewed the Plan with Debtor's counsel and discussed with them the requirements for confirmation of the Plan pursuant to Section 1129 of Title 11 of the United States Code (the "Bankruptcy Code").

II. **BACKGROUND AND FORMULATION OF THE PLAN**

4. Riverside is a Florida limited liability company formerly known as USSEC Riverside II, LLC. In November 2009, USSEC Riverside II, LLC changed its name to Bulova Tech Riverside LLC. The Debtor owns and operates a 465,000 square foot warehousing and light industrial multi-use facility located at 110 L.E. Barry Road in Natchez, Mississippi (the "Primary Property"). The warehouse is located adjacent to the Natchez-Adams County Port on the Mississippi River, with both port and rail access. The Debtor also owns a non-contiguous separate parcel of property located at 91 Carthage Point Road in Natchez, Mississippi (the "Separate Property"), that it utilizes for various business purposes.

5. In formulating a plan that was fair and equitable to all creditors and parties in interest, the Debtor's attorneys and I have attempted to: (i) preserve and maximize the value of the Debtor's assets so that those assets may be distributed to the Debtor's creditors in the priority provided pursuant to the Bankruptcy Code; and (ii) allow for a greater recovery than would take place in a forced liquidation.

6. The essential elements of the Plan include, among other things:

(a) the continued operation of the Debtor's business as a warehouse/distribution center;

(b) the Debtor's entry into a short term lease (defined in the Plan as the "Interim Lease," effective as of November 1, 2010) with Bulova Technologies Group, Inc., or a subsidiary or an affiliated entity (collectively, "BLVT") to provide up to $35,000 per month of additional cash to fund payments to be made on the Effective Date of the Plan to fund any monthly shortfall in operating expenses, and to make the monthly deferred cash payments under the Plan to M&I Marshall & Ilsley Bank ("M&I Bank") and, if allowed, to Valley National Bank (of up to $12,000 a month), all on account of Allowed Secured Claims;

(c) the sale of the Debtor's Separate Property to pay Administrative Expenses not paid on the Effective Date, Allowed Secured Tax Claims, and Priority Tax Claims;

(d) the payment of Administrative and Priority Claims in full on the Effective Date of the Plan in accordance with the requirements of the Bankruptcy Code;

(e) the Sale or refinancing of the Debtor's Primary Property within a twenty-four (24) month period and the payment in full of all Allowed Claims secured by the Primary Property from the proceeds of Sale; and

(f) the payment of all Unsecured Claims in full through two (2) payments with the first occurring within ninety (90) days of the Effective Date and the second occurring within fifteen (15) days of the closing of the sale of the Separate Property and upon the closing of the Sale or refinancing of the Primary Property.

7. I have personal knowledge of BLVT's financial resources and its ability to make the payments contemplated under the Interim Lease.

### III. CONFIRMATION REQUIREMENTS OF 11 U.S.C. § 1129

After discussing the requirements of confirmation under Section 1129 of the Bankruptcy Code with the Debtor's attorneys, I believe the Plan meets the requirements for confirmation. The facts supporting this belief are as follows:

8. **Plan Compliance – Section 1129(a)(1).** The Plan complies with the applicable provisions of the Bankruptcy Code. By way of example only, the Plan includes the following provisions:

    (a) **Classification of Claims and Interests:** Article 3 of the Plan provides for the classification and treatment of claims and interests in accordance with the requirements of Section 1122 of the Bankruptcy Code. The Plan designates nine (9) separate classes of claims and one (1) class of equity interests and specifies whether each class of claims is impaired or unimpaired. Each of the claims placed in a particular class is the same or substantially similar to the other claims in that particular class.

    (b) **Delineation of Unimpaired and Impaired Classes:** Article 4 specifies and identifies treatment of any class of claims and interests that are impaired and unimpaired under the Plan.

    (c) **Same Treatment for Claims within a Particular Class:** Article 5 provides the same treatment for each claim or interest within a particular class, unless the holder of a particular claim agrees to a different treatment as to such particular claim.

    (d) **Provides for Adequate Means of Implementation:** The Plan provides for adequate means of implementation of the Plan, including, among other things, the use of (i) available Cash from business operations, (ii) income generated from the Interim Lease to be entered into with BLVT or affiliated third party, and (iii) from the sale of the Separate Property.

9. **Proponent Compliance – Section 1129(a)(2).** The Debtor has complied with the applicable provisions of the Bankruptcy Code. By way of example:

    (a) The Debtor performed and complied with the duties imposed under Section 1107 as Debtor in Possession and authorized to continue business operations.

    (b) The Debtor has not used cash collateral or other property other than in the ordinary course of business without consent or permission.

(c) The Debtor obtained Court Orders for the employment of professionals.

(d) The Debtor has complied with the requirements regarding the use, sale, and lease of cash collateral and property of the estate and has otherwise complied with Section 363 of the Bankruptcy Code.

(e) The Debtor has filed its Monthly Operating Reports.

(f) The Debtor solicited acceptances of the Plan in accordance with Section 1125 of the Bankruptcy Code. On July 28, 2010, all claim and interest holders were served with a copy of the Solicitation Package which included, among other things, the (a) *Disclosure Statement With Respect to Chapter 11 Plan for Bulova Tech Riverside LLC* (Doc. No. 61) (the "Disclosure Statement"), (b) *Chapter 11 Plan for Bulova Tech Riverside LLC* (Doc. No. 60), (c) *Order Conditionally Approving Disclosure Statement, Fixing Time to File Objections to the Disclosure Statement, Fixing Time to File Applications for Administrative Expenses, Setting Hearing on Confirmation of the Plan, and Setting Deadlines with Respect to Confirmation Hearing* (Doc. No. 64); and (d) *Ballot for Accepting or Rejecting Chapter 11 Plan*.

10. **Good Faith – Section 1129(a)(3).** The Plan has been proposed in good faith and not by any means forbidden by law. The Plan has been proposed with the legitimate and honest purpose of maximizing the value of the Debtor's assets and minimizing the claims against the Debtor's estate in an effort to provide a meaningful return to creditors. The Plan has a likelihood of achieving these objectives. Evidence of the Debtor's good faith can be established by, among other things, (a) the Debtor's continued operation of its warehouse/distribution center; (b) the negotiation of a global compromise with M&I Bank that has been approved by the Court, (c) the negotiation of the Interim Lease to provide a means of payment of Allowed Secured Claims; and (d) the commencement of monthly payments to the Adams County Tax Collector on the fifteenth day of the calendar month following the Effective Date, pending the sale of the Primary Property and the Separate Property.

11. **Payment to Professionals - Section 1129(a)(4).** All payments paid, or to be paid, by the Debtor or in connection with this case or in connection with the Plan have been disclosed to the Bankruptcy Court and either have been approved by or are subject to the approval of the Bankruptcy Court.

12. **Officers/Directors - Section 1129(a)(5).** Section 1129(a)(5) requires the disclosure of the identity and affiliations of any individual proposed to serve after confirmation of the Plan, as a director, officer, or voting trustee of the Debtor, or a successor to the Debtor under the Plan. The Debtor will continue to exist after the Effective Date as a corporate entity with all of the powers of a Florida limited liability company. I will remain as the Manager of the Debtor and its sole officer.

13. The Debtor will take such action post confirmation as may be necessary as to object to Claims, make distributions, and take other action as is necessary to consummate the Plan.

14. **Government Approval - Section 1129(a)(6).** No regulatory commission has jurisdiction, after confirmation of the Plan, over the rates of the Debtor.

15. **Best Interest of Creditors - Section 1129(a)(7).** As discussed in the Debtor's Disclosure Statement, the Debtor believes that a Chapter 7 liquidation would result in a much reduced value for the Primary Property and Separate Property than the funds that will be derived if the Primary Property is sold or refinanced under the Plan. While secured and unsecured creditors might ultimately be paid in full in a liquidation, additional administrative expenses would result from the appointment of a trustee and corresponding professionals. The Debtor believes that the anticipated recovery to both secured and unsecured creditors under the Plan is greater than the recovery under a hypothetical Chapter

7 liquidation, and the Debtor's management and attorneys believe that the Plan satisfies the "Best Interest of Creditors Test."

16. **Acceptance or Rejection of Plan - Section 1129(a)(8)**. Presently, the Debtor has received the affirmative votes accepting the Plan of Class 6, the general unsecured class, thereby obtaining the acceptance of at least one impaired class of claims, without including the votes of any "insiders." The Debtor believes that M&I Bank and Fifth Third Bank, also impaired classes, will accept the Plan.

17. To the extent the Court determines that any class that has not accepted this Plan is impaired under Section 1124 of the Bankruptcy Code, the Debtor believes that the Plan is fair and equitable with respect to such class and that the Plan satisfies the requirements for confirmation under Section 1129(b).

18. **Priority Claims - Section 1129(a)(9)**. The Plan complies with the requirements of Section 1129(a)(9) of the Bankruptcy Code, in that:

(a) All administrative claims entitled to priority under Section 507(a)(2) were either paid (i) during the pendency of the Chapter 11 case, (ii) will be paid in cash on the Effective Date, or upon allowance of the claim (in the case of post-petition wages or salaries), or (iii) the holder of the claim has agreed to alternative treatment. Currently the administrative claims that have been allowed and the fees and reimbursement of Debtor's counsel through September 23, 2010 in the net amount of $47,072 after application of the retainer and unpaid fees to the U.S. Trustee.

(b) To the Debtor's best information, there are no outstanding claims against the Debtor of the type specified in Sections 507(a)(3) through (a)(7), (a)(9), and (a)(10) of the Bankruptcy Code that have not been paid.

(c) The Debtor will have sufficient funds to pay the allowed amount of any priority tax claims, if any, as provided in the Bankruptcy Code from the sale of the Separate Property that, under the Plan, will occur by July 31, 2011.

19. **Acceptance by Impaired Classes - Section 1129(a)(10)**. Based on the ballots filed as of August 27, 2010, at least one impaired class that voted on the Plan has

voted in favor of the Plan, determined without including any acceptance of the Plan by any insider. The Debtor anticipates that it may need to seek confirmation pursuant to Section 1129(b) of the Bankruptcy Code with respect to all non-accepting impaired classes.

20. **Feasibility - Section 1129(a)(11).** Confirmation of the Plan is not likely to be followed by the need for further financial reorganization of the Debtor and sufficient resources are available to pay all claims to be paid under the Plan.

Based on the best information available as of the date of this Declaration, the Debtor will have sufficient funds to pay all allowed administrative expense claims, undisputed priority claims, and allowed unsecured claims as of (a) the Effective Date, (b) the date upon which such claim becomes an allowed claim, or (c) upon such other terms as may be agreed to between the Debtor and any holder of an allowed claim.

Specifically, upon the Effective Date, BLVT will advance up to $70,000 representing lease payments under the Interim Lease for November and December 2010, which will allow for the payment of Administrative Expenses to be paid on the Effective Date. BLVT is also prepared to and will make an additional cash contribution in January 2011 of up to $50,000 to allow the Debtor to pay the 2010 property taxes that will be due on January 31, 2011.

The Debtor also believes that the monthly cash flow of up to $35,000 per month under the Interim Lease will provide sufficient cash flow to pay the monthly payments contemplated under the Plan to Valley, M&I Bank, and on account of Secured Tax Claims. The Debtor believes the Sale of the Separate Property could yield up to $150,000 by July 31, 2011 to provide the source of funds to pay claims that under the

Plan are to be paid from those proceeds. A projected cash flow pro-forma reflecting all of the sources and uses of funds through December 31, 2011 is attached as **Exhibit "A."**

Finally, the Debtor has entered into a letter of intent with Imperium Development, Inc. and BLVT for the sale and leaseback of the Primary Property for $11,100,000. A copy of the letter of intent is attached as **Exhibit "B."** While the contemplated transaction is in the due diligence period and subject to documentation and is contingent on satisfactory review of the financial information of BLVT as the prospective tenant, the Debtor believes the transaction, or a similar transaction, will close prior to two years from the Effective Date.

21. **U.S. Trustee Fees – Section 1129(a)(12).** All fees payable under 28 U.S.C. 1930 have been paid or will be paid on the Effective Date of the Plan.

22. **Retiree Claims - Section 1129(a)(13).** There are no retiree benefits to be paid after the Effective date. The Debtor does not provide retiree benefits.

23. **Avoidance of Taxes - Section 1129(a)(14).** The Plan has not been proposed for the purpose of avoiding taxes or the application of Section 5 of the Securities Act of 1933.

IV. **CONCLUSION.**

Based on the foregoing, the Debtor respectfully submits that the required showing under Bankruptcy Code Section 1129 has been made and, accordingly, the Plan should be

confirmed subject to the provisions of Bankruptcy Code Sections 1129(a) and 1129(b), if required. This concludes my Declaration.

Dated this 15th day of December 2010.

/s/ *[signature]*
John Stanton, Manager

# Pro-Forma (Bulova Tech Riverside LLC).xlsx

EXHIBIT "A"

| | Notes | 2010 Nov. | 2010 Dec. | 2010 Total | 2011 Jan. | Feb. | Mar. | April | May | June | July | August | Sept. | Oct. | Nov. | Dec. | 2011 Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash at Beginning of Period** | | - | 32,465 | - | 17,523 | 32,946 | 35,521 | 11,371 | 13,021 | 15,871 | 18,521 | 59,971 | 68,621 | 77,271 | 84,721 | 93,371 | 17,523 |
| | | | | | | | | | | | | | | | | | |
| **Revenue** | | | | | | | | | | | | | | | | | |
| Rent Roll - Warehouse | | 24,475 | 26,023 | 50,498 | 26,023 | 25,375 | 25,375 | 25,375 | 25,375 | 25,375 | 25,375 | 25,375 | 25,375 | 25,375 | 25,375 | 25,375 | 305,148 |
| **Total Revenue** | | 24,475 | 26,023 | 50,498 | 26,023 | 25,375 | 25,375 | 25,375 | 25,375 | 25,375 | 25,375 | 25,375 | 25,375 | 25,375 | 25,375 | 25,375 | 305,148 |
| | | | | | | | | | | | | | | | | | |
| **Cost of Revenue** | | | | | | | | | | | | | | | | | |
| Labor | | | | - | | | | | | | | | | | | | - |
| Material | | | | - | | | | | | | | | | | | | - |
| Total Cost of Revenue | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | | | | | | | | | | | | | | | | | |
| **Gross Profit** | | 24,475 | 26,023 | 50,498 | 26,023 | 25,375 | 25,375 | 25,375 | 25,375 | 25,375 | 25,375 | 25,375 | 25,375 | 25,375 | 25,375 | 25,375 | 305,148 |
| | | | | | | | | | | | | | | | | | |
| **Operating Expenses** | | | | | | | | | | | | | | | | | |
| Insurance | | 6,115 | 6,115 | 12,230 | 6,115 | 6,115 | 6,115 | 6,115 | 6,115 | 6,115 | 6,115 | 6,115 | 6,115 | 6,115 | 6,115 | 6,115 | 73,380 |
| Payroll | | 16,100 | 16,100 | 32,200 | 16,100 | 16,100 | 16,100 | 16,100 | 16,100 | 16,100 | 16,100 | 16,100 | 16,100 | 16,100 | 16,100 | 16,100 | 193,200 |
| Payroll Taxes/Liabilities | | 1,500 | 1,500 | 3,000 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| Utilities | | 1,200 | 1,200 | 2,400 | 1,200 | 1,200 | 1,000 | 1,000 | 1,000 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 13,800 |
| Equipment Maintenance & Repair | | 1,170 | | 1,170 | 800 | | | 1,200 | | | 1,200 | | | 1,200 | | | 4,400 |
| Fuel/Propane | | 550 | 550 | 1,100 | 625 | 625 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 6,750 |
| 2011 Real Property Taxes (Accrued) | | | | - | 4,760 | 4,760 | 4,760 | 4,760 | 4,760 | 4,760 | 4,760 | 4,760 | 4,760 | 4,760 | 4,760 | 4,760 | 57,120 |
| Travel & Entertainment | | | | - | | | | | | | | | | | | | - |
| Total Operating Expenses | | 27,010 | 25,965 | 52,975 | 31,600 | 30,800 | 30,525 | 31,725 | 30,525 | 30,725 | 31,925 | 30,725 | 30,725 | 31,925 | 30,725 | 30,725 | 372,650 |
| | | | | | | | | | | | | | | | | | |
| **Operating Income or Loss** | | (2,535) | 58 | (2,477) | (5,577) | (5,425) | (5,150) | (6,350) | (5,150) | (5,350) | (6,550) | (5,350) | (5,350) | (6,550) | (5,350) | (5,350) | (67,502) |
| | | | | | | | | | | | | | | | | | |
| **Other Income** | | | | | | | | | | | | | | | | | |
| Interim Short-Term Lease | 1 | 35,000 | 35,000 | 70,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 420,000 |
| Total Other Income | | 35,000 | 35,000 | 70,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 420,000 |
| | | | | | | | | | | | | | | | | | |
| **Non-recurring Events** | | | | | | | | | | | | | | | | | |
| Primary Property Sale (Net) | | | | - | | | | | | | | | | | | | - |
| 2010 Real Property Taxes | | | | - | (50,000) | | | | | | | | | | | | (50,000) |
| BLVT Tax Contribution | | | | | 50,000 | | | | | | | | | | | | |
| Separate Property Sale (Net) | | | | - | | | | | | | 150,000 | | | | | | 150,000 |
| Total Non-recurring Events | | - | - | - | - | - | - | - | - | - | 150,000 | - | - | - | - | - | 150,000 |
| | | | | | | | | | | | | | | | | | |
| **Bankruptcy Expenses** | | | | | | | | | | | | | | | | | |
| U.S. Trustee Administrative Fees | | | 50,000 | 50,000 | | | | | | | | | | | | | - |
| Priority Tax Claims | 2 | | | - | | | | | | | 65,000 | | | | | | 65,000 |
| Secured Tax Claims | 3 | | | - | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 24,000 | | | | | | 60,000 |
| Valley Claim | 4 | | | - | | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 143,000 |
| M&I Claim | 5 | | | - | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 96,000 |
| Unsecured Claims | 6 | | | - | | | 27,000 | | | | 27,000 | | | | | | 54,000 |
| Total Bankruptcy Expenses | | - | 50,000 | 50,000 | 14,000 | 27,000 | 54,000 | 27,000 | 27,000 | 27,000 | 137,000 | 21,000 | 21,000 | 21,000 | 21,000 | 21,000 | 418,000 |
| | | | | | | | | | | | | | | | | | |
| **Earnings Before Taxes** | | 32,465 | (14,942) | 17,523 | 15,423 | 2,575 | (24,150) | 1,650 | 2,850 | 2,650 | 41,450 | 8,650 | 8,650 | 7,450 | 8,650 | 8,650 | 84,498 |
| Income Tax Expense | | | | - | | | | | | | | | | | | | - |
| | | | | | | | | | | | | | | | | | |
| **Net Income** | | 32,465 | (14,942) | 17,523 | 15,423 | 2,575 | (24,150) | 1,650 | 2,850 | 2,650 | 41,450 | 8,650 | 8,650 | 7,450 | 8,650 | 8,650 | 84,498 |
| | | | | | | | | | | | | | | | | | |
| **Cash at End of Period** | | 32,465 | 17,523 | 17,523 | 32,946 | 35,521 | 11,371 | 13,021 | 15,871 | 18,521 | 59,971 | 68,621 | 77,271 | 84,721 | 93,371 | 102,021 | 102,021 |

Manning Financial LLC

Printed on 12/15/2010

1 of 2

# Pro-Forma (Bulova Tech Riverside LLC).xlsx

**Notes:**

1. Plan contemplates additional income in the form of an interim short-term lease with an affiliated entity that will generate up to $35,000 per month. It is assumed that these payments are retroactive to November 1, 2010.

2. Priority tax claims to be paid from proceeds generated from sale of "Separate Property." It is anticipated that the sale of the "Separate Property" will occur on or before July 31, 2011.

3. Secured tax claims of approximately $60,000 will be amortized over a 12-month period with a balloon acceleration clause contingent on the sale of the "Separate Property." It is anticipated that the sale of the "Separate Property" will occur on or before July 31, 2011.

4. Valley's claim of approximately $1.5 million to be paid on an interest-only basis starting the second month after the Effective Date at an interest rate based on the Prime Rate ( estimated at 3.25% as published in the Wall Street Journal on December 13, 2010) + a risk factor of between 2% and 5%, resulting in a total rate of between 5.25% and 8%. For the purposes of thes projections the Debtor has estimated a payment of $12,000 which is based on a rate of approximately 7.75%. This monthly payment will be paid until the sale of the Primary Property is consummated, which is anticipated to occur within 2 years from the Effective Date.

5. M&I claim to be paid down at the rate of $8,000 per month starting the month after the Effective Date.

6. Unsecured claims of approximately $54,000 to be paid in two equal tranches of 50% each. The first tranche is to be paid within 90-days of the Effective Date. The second tranche is to be paid upon the sale of the "Separate Property."

EXHIBIT "B"



October 7, 2010

Mr. John Stanton
Bulova Technologies Group, Inc.
19337 US HWY 19 N
Suite 525
Clearwater, FL 33764

  Re: Letter of Intent for the Sale/Leaseback of the 35.28+/- acre parcel and 447,800 sq. ft building at 110 L.E. Barry Rd., Natchez, MS.

Imperium Development, Inc. has an interest in a Sale/Leaseback Agreement for above captioned property. The purpose of this letter of intent is to outline the proposed terms and conditions under which Imperium would be willing to negotiate an Agreement for the subject property referenced above.

Buyer/Lessor: Imperium Development, Inc. and/or its assigns.

Seller/Lessee: Bulova Technologies Group, Inc. /BULOVA TECH RIVERSIDE, LLC ("SELLER") ("LESSEE")

Subject Property: 38.25+/- acre parcel and 487,500 sq. ft. building at 110 L.E. Barry Rd., Natchez, MS

Property Purchase Price: $11,100,000.00

Feasibility Period: Buyer shall have a period (the "Feasibility Period") of ~~sixty (60)~~ Fourty-Five (45) days from the effective date of a Definitive Agreement (the "Effective Date") to gather and complete all information pertaining to the general inspections of this property. In the event that Buyer's studies are unsatisfactory in Buyer's sole opinion, Buyer shall have the right to terminate the Definitive Agreement by giving written notice of such termination to Seller within the Feasibility Period. Neither Buyer nor Seller will have any responsibilities to each other with regard to the Definitive Agreement. Upon expiration of (the "Feasibility Period") the Purchaser shall deposit a $100,000 non-refundable in the form of cash into the Sellers escrow account.

Closing Date: Shall occur:

    (I) Thirty (30) days following completion of the Feasibility Period

|  |  |
|---|---|
|  | $132,474.17    $1,589,690 |
|  | ~~$124,100~~   ~~$1,467,200~~ |
| Lease: OK AM | ~~$141,003.33~~/month or ~~$1,701,640.00~~/year |
| Term: | Twenty Years (20) Year Term; two (2) five (5) year options. |
| Increases: OK AM | Annual increases based on CPI or 2.5% whichever is greater *ok every*<br>~~Annual increases based on CPI or 3% whichever is greater~~ ~~5 years~~ |
| Rent Commencement: | Rent shall commence upon closing of the purchase of the property by Imperium Development, Inc. and/or its assigns and month one (1) rent will be credited to Lessor out of Closing proceeds. |
| Form: | The terms in this LOI shall be incorporated into a Purchase and Sale Agreement, Lease agreement and any other necessary documentation required and will be drafted by Buyer's attorney. |
| Letter of Intent: | This is a letter of intent. It is not intended to constitute an agreement that will be legally binding on either party hereto and is not intended to be relied upon by the parties as constituting a final agreement. In order to have a final agreement, the above principal terms as well as certain other standard and additional provisions would be set forth in a definitive Purchase and Sale Agreement and Lease executed and delivered by both parties (the "Definitive Agreement"). Neither Buyer/Lessor nor Seller/Lessee is legally obligated to enter into a Definitive Agreement or to complete any of the transactions contemplated or provided for in this letter until definitive documents evidencing a Definitive Agreement have been mutually executed and delivered. This letter does not address and is not intended to address numerous points customarily included in definitive Lease agreements or other points that may be addressed and agreed to by the parties in a Definitive Agreement. The signatures below constitute an acknowledgment by the parties that (i) this letter constitutes a summary of the negotiations to date and does not result in any contractual obligation, either express or implied, on either party, and (ii) this letter does not constitute a preliminary contractual undertaking upon which either party may justifiably rely as a basis for further actions or negotiations. This letter is executed by the parties with the understanding that no party will be bound by any of its terms until negotiations have been concluded and definitive documents evidencing a Definitive Agreement have been mutually executed and delivered covering all of the foregoing matters and such additional considerations as either of us deem appropriate. We contemplate that we will continue negotiations relating to this letter of intent, but we each specifically reserve the right to terminate negotiations, at any time, with or without cause. Neither the expenditure of funds nor the taking of any actions by either of us with respect to this letter of intent or the transaction contemplated hereby will be regarded as the personal performance of a binding agreement and both parties expressly waive any right to assert claims for reimbursement or damages against the other party arising out of such expenditures and/or actions. |

KAM 11/11/10   *JP*   *11/13/10*

*^subject to court approval in Seller's Chapter 11 case,*
Notwithstanding the foregoing, the parties agree that all sections hereof are binding and enforceable against the parties and that if either party is required to engage the services of an attorney to enforce any of those sections, the prevailing party shall be entitled to recover from the non-prevailing party, in addition to other relief sought, all of it's associated costs and expenses, including reasonable attorney's fees and court costs. ~~As such, the parties acknowledge and agree that if the transaction contemplated herein does not result in the execution of a definitive written agreement due to the parties deviation from the core terms set forth herein, Buyer will be materially damaged and Buyer shall have the right to pursue all available rights and remedies against seller.~~ *All obligations of Seller are subject to Court approval.*  *JP 11/13/10*

If the terms of this letter of intent are acceptable, please sign below and return one fully signed original of this letter to my attention.

Sincerely,
IMPERIUM DEVELOPMENT, INC.

*[signature]*

Kyle A. Mowitz
President

Acknowledged and Accepted:

By: *[signature]*
Name: JOHN SMNYON
Title: CHAIRMAN / MANAGING MEMBER
Date: 10/13/10